

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00078-CV
_____

IN THE INTEREST OF J.L., A.L., AND J.L., CHILDREN

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 18C0315-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Kelly's parental rights to her children, Jeb, Amber, and James, were terminated in a suit brought by the Texas Department of Family and Protective Services (Department).[1] Bob's parental rights to Amber and James were also terminated.[2] After a bench trial, the trial court found that (1) Kelly and Bob knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, (2) Kelly and Bob engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, (3) Kelly and Bob knowingly engaged in criminal conduct that resulted in their conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition, and (4) termination of Kelly's and Bob's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (Q), (2) (Supp.). Kelly and Bob appeal.

In her sole point of error on appeal, Kelly argues that she received ineffective assistance of counsel because counsel did not challenge the trial court's aggravated circumstances finding. Bob is represented on appeal by court-appointed counsel who has filed a brief in accordance with the requirements of *Anders v. California*, 386 U.S. 738 (1967). Court-appointed counsel has concluded, after a thorough review of the record, that Bob's appeal is frivolous and without merit.

We find that Kelly has not shown that her counsel rendered ineffective assistance. We also agree that no arguable issues are presented in Bob's appeal. Therefore, we affirm the judgment of

---

[1] In this opinion, we refer to the children and their parents by pseudonyms in order to protect the children's identities. *See* TEX. R. APP. P. 9.8.

[2] Jeb's biological father signed an affidavit of relinquishment of parental rights and is not a party to this appeal.

the trial court. However, in consideration of appointed counsel's continuing obligation to represent Bob for purposes of any further appellate review, we deny Bob's counsel's motion to withdraw.

## I.      Factual and Procedural Background

Bob and Kelly had another child, Darrin. The affidavit in support of the Department's petition for removal of all the children alleged that Darrin suffered a subdural hematoma after being beaten at home by Bob while Kelly was in the home. At a hearing to determine whether aggravated circumstances were present, the Department presented evidence showing that Bob and Kelly took four-year-old Darrin to the hospital with fresh bruises all over his body and that both Bob and Kelly had a history of physical abuse against their children. The testimony also established that Darrin died as a result of his injuries and that Bob was being charged with homicide. As a result of this evidence, and the Department's recitation of Bob and Kelly's lengthy history of involvement with Child Protective Services (CPS), the trial court made a finding of aggravated circumstances pursuant to Section 262.2015 of the Texas Family Code, which reads, in relevant part:

> (a)      The court may waive the requirement of a service plan and the requirement to make reasonable efforts to return the child to a parent and may accelerate the trial schedule to result in a final order for a child under the care of the Department of Family and Protective Services at an earlier date than provided by Subchapter D, Chapter 263, if the court finds that the parent has subjected the child to aggravated circumstances.

> (b)      The court may find under Subsection (a) that a parent has subjected the child to aggravated circumstances if:

> . . . .

> (2)      the child or another child of the parent is a victim of serious bodily injury . . . inflicted by the parent . . . ; [or]

3

(3) the parent has engaged in conduct against the child or another child of the parent that would constitute an offense under the following provisions of the Penal Code:

  (A) Section 19.02 (murder); [or]

. . . .

  (H) Section 22.04 (injury to a child, elderly individual, or disabled individual) . . . .

TEX. FAM. CODE ANN. § 262.2015 (footnote omitted) (citation omitted).  By the time of the next April 5, 2018, status hearing, Kelly had also been incarcerated.  Because neither Kelly nor Bob challenged the aggravated circumstances findings, the trial court entered an order on April 5 that waived the requirements of the Department to offer a family service plan and make reasonable efforts to return the children to their parents.

At the final hearing, Todd Aultman, the Interim Chief of the Wake Village Police Department, testified that an autopsy report revealed that Darrin's subdural hematoma was the cause of his death and that Bob and Kelly's explanation of how the injury occurred was "just not plausible."  According to Aultman, Darrin was injured at home while Jeb was at home.

Aultman testified that Bob was tried and found guilty of felony murder and was sentenced to life imprisonment.  Aultman arrested Kelly for injury to a child because she knew of Darrin's injuries and did not protect him or report abusive incidents.  He testified that Kelly was found guilty of injury to a child and was sentenced to ninety-nine years' imprisonment.  Certified judgments of conviction for Bob's and Kelly's offenses were admitted into evidence.

4

Aultman testified that both parents failed to provide a safe home for their children. Chantel Finley, a CPS caseworker, and Melinda Cree, a representative of Court Appointed Special Advocates, testified that it was in the children's best interests for their parents' rights to be terminated. Testimony was also presented about the children's improved conditions in their current placements. After hearing this evidence, the trial court entered the parental-rights termination order.

## II. Kelly Has Not Shown that Her Counsel Rendered Ineffective Assistance

In her sole issue on appeal, Kelly argues that her appointed counsel has rendered ineffective assistance. "In parental-rights termination cases in Texas . . . brought by the Department[,] an indigent person has a statutory right to counsel." *In re K.O.*, 488 S.W.3d 829, 834 (Tex. App.— Texarkana 2016, pet. denied) (alteration in original) (quoting *In re J.M.A.E.W.*, No. 06-14-00087-CV, 2015 WL 1119761, at *3 (Tex. App.—Texarkana Mar. 13, 2015, no pet.) (mem. op.) (citing TEX. FAM. CODE ANN. § 107.013(a) (West 2014); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003))). "This statutory right to counsel also embodies the right to effective counsel." *Id.* (quoting *J.M.A.E.W.*, 2015 WL 1119761, at *3); *see In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010)). "Thus, a parent may challenge an order of termination on the ground that court-appointed counsel rendered ineffective assistance." *In re Z.C.*, No. 12-15-00279-CV, 2016 WL 1730740, at *2 (Tex. App.—Tyler Apr. 29, 2016, no pet.) (mem. op. & order) (citing *M.S.*, 115 S.W.3d at 544–45; *In re J.O.A.*, 283 S.W.3d 336, 341 (Tex. 2009)).

"The standard used for parental-rights termination cases is the same as that used in criminal cases and is set forth in *Strickland*." *K.O.*, 488 S.W.3d at 834 (quoting *J.M.A.E.W.*, 2015 WL

5

1119761, at \*3 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "The right to effective assistance of counsel does not guarantee, however, 'errorless or perfect counsel whose competency of representation is to be judged by hindsight.'" *Id.* (quoting *J.M.A.E.W.*, 2015 WL 1119761, at \*3); *see Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

"To prevail on [her] ineffective assistance claim, [Kelly] 'must prove by a preponderance of the evidence that (1) [her] counsel's performance was deficient, that is, that it fell below an objective standard of reasonableness; and (2) it is reasonably probable that, except for [her] counsel's unprofessional errors, the outcome of the proceeding would have been different." *K.O.*, 488 S.W.3d at 834 (first, third, and fourth alterations in original) (quoting *J.M.A.E.W.*, 2015 WL 1119761, at \*3) (citing *Strickland*, 466 U.S. at 687–88, 694). "Failure to satisfy either prong of the *Strickland* test is fatal." *Id.* at 834–35 (quoting *J.M.A.E.W.*, 2015 WL 1119761, at \*3) (citing *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

To support a finding that Kelly's trial counsel was ineffective, the trial record must affirmatively demonstrate counsel's deficiency. *Id.* at 835. "In reviewing trial counsel's performance, we take into account the circumstances surrounding the case and focus primarily on whether the manner of his performance was reasonably effective." *Id.* (quoting *J.M.A.E.W.*, 2015 WL 1119761, at \*3) (citing *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006) (per curiam); *M.S.*, 115 S.W.3d at 545)). "We give great deference to trial counsel's performance and indulge a strong presumption that his conduct falls within the wide range of reasonably professional assistance."

6

*Id.* (quoting *J.M.A.E.W.*, 2015 WL 1119761, at *3) (citing *H.R.M.*, 209 S.W.3d at 111; *M.S.*, 115 S.W.3d at 545)). "This includes the possibility that his actions were strategic." *Id.* (quoting *J.M.A.E.W.*, 2015 WL 1119761, at *3) (citing *H.R.M.*, 209 S.W.3d at 111; *M.S.*, 115 S.W.3d at 545)). "'We only find ineffective assistance if the conduct is' so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *J.M.A.E.W.*, 2015 WL 1119761, at *3; *H.R.M.*, 209 S.W.3d at 111).

Kelly argues that her counsel's failure to object to the aggravated circumstances finding "precluded her from obtaining [family based] services from the [D]epartment and absolved the Department of any duty to seek reunification or family placement for her children." At the status hearing, Kelly's counsel explained that Kelly was not challenging the aggravated circumstances determination because she was "charged in a criminal matter related to this [case]," and he had advised her not to testify to prevent her from making incriminating statements. Counsel added, "[T]hat's what her criminal lawyer would recommend as well." Counsel also said that he had explained to Kelly that she was still entitled to a jury trial on the issue of termination of her parental rights and that Kelly was not "conceding anything" but did not "necessarily want[] to have the hearing" contesting the aggravated circumstances finding. Counsel clarified, "We're not conceding that her position would be that [the finding of aggravated circumstances] was true or anything like that. What we're saying is we're not going to contest it. We don't want to reopen the hearing . . . for other strategy reasons."

The record here shows that Kelly was facing pending criminal charges for injury to a child. As a result, counsel advised Kelly not to contest the aggravated circumstances finding because

7

doing so could require her testimony. Based on the facts recited above, it was well within reason for counsel to believe that, when called to testify, Kelly would either incriminate herself or commit perjury. We find that the record does not firmly establish counsel's deficiency, and we can determine strategic reasons for counsel's decision not to object to the aggravated circumstances finding. Thus, we conclude that Kelly has failed to demonstrate that her counsel's representation constituted ineffective assistance.[3] We overrule Kelly's sole point of error.

## III. No Arguable Issues Are Presented in Bob's Appeal

The procedures set forth in *Anders v. California* are applicable to an appeal from a trial court's order terminating parental rights when an appellant's appointed appellate counsel concludes that there are no nonfrivolous issues to assert on appeal. *See In re P.M.*, 520 S.W.3d 24, 27 n.10 (Tex. 2016) (per curiam) (citing *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998)); *In re P.M.H.*, No. 06-10-00008-CV, 2010 WL 1794390, at *1 (Tex. App.—Texarkana May 6, 2010, no pet.) (mem. op.). The *Anders* brief filed by Bob's counsel presents a professional evaluation of the record demonstrating why there are no arguable grounds for reversal. Counsel has established that she provided Bob with a copy of the brief and the appellate record and also notified Bob of his right to file a pro se response. By letter dated September 30, 2019, this Court informed Bob that any pro se response was due on or before October 30, 2019. Bob did not exercise his right to file a pro se response.

---

[3]As a result of Kelly's conviction and the testimony at the final hearing, we also conclude that Kelly has not shown that the result of the proceeding would have been different absent counsel's alleged ineffective assistance.

Court-appointed counsel's brief meets the requirements of *Anders* by providing a professional evaluation of the record and stating why there are no arguable grounds for reversal on appeal. *See Anders*, 386 U.S. at 744. Having thoroughly reviewed the record and counsel's brief, we agree with counsel's assessment that the appeal is frivolous and without merit. We find nothing in the record that could arguably support the appeal. *See id.* Accordingly, we affirm the trial court's final order terminating Bob's parental rights to Amber and James.

However, we deny Bob's counsel's motion to withdraw. In the parental-rights termination context, "counsel's belief that the client has no grounds to seek further review from the court of appeals' decision" is not "good cause" sufficient to justify counsel's withdrawal. *See P.M.*, 520 S.W.3d at 27. Instead, counsel's duty to her client extends through the exhaustion or waiver of "all appeals in relation to any final order terminating parental rights." TEX. FAM. CODE ANN. § 107.016(3)(B). If Bob wishes to pursue an appeal to the Texas Supreme Court, "appointed counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *P.M.*, 520 S.W.3d at 27–28.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    January 7, 2020
Date Decided:     January 10, 2020

9