

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00055-CV
_____

IN THE INTEREST OF J.P., A CHILD

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 24C0758-102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's parental rights to her son, Jimmy.[1] The trial court terminated Mother's parental rights after finding that (1) she "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed his] physical or emotional well-being," (2) she "used a controlled substance . . . in a manner that endangered the health or safety of the child" and "failed to complete a court-ordered substance abuse treatment program," (3) she was "the cause of the child being born addicted to . . . a controlled substance," and (4) termination of her parental rights was in the child's best interests.[2] *See* Act of May 9, 2023, 88th Leg., R.S., ch. 728, § 1, 2023 Tex. Gen. Laws 1768, 1768 (amended 2023, 2025) (current version at TEX. FAM. CODE § 161.001(b)(1)(D), (O), (Q), (b)(2)).

On appeal, Mother argues only that the trial court erred by finding that it was in Jimmy's best interests to terminate Mother's parental rights. Because ample evidence supported the trial court's best-interests finding, we overrule Mother's sole point of error and affirm the trial court's decision.

## I. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re L.E.S.*, 471 S.W.3d 915, 919 (Tex. App.—Texarkana 2015, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to

---

[1] We use pseudonyms to protect the identity of the child. *See* TEX. R. APP. P. 9.8.

[2] Father's parental rights were also terminated, but he does not appeal.

make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* at 920 (quoting Tex. Fam. Code Ann. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009))). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 919–20 (quoting *In re A.B.*, 437 S.W.3d at 500).[3]

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi–Edingburg Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination '"can never be justified without the most solid and substantial reasons."'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (quoting *State v. Deaton*, 54 S.W. 901, 903 (Tex. 1900))).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is

---

[3]"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *In re L.E.S.*, 471 S.W.3d at 920 (citing Tex. Fam. Code Ann. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). Mother does not challenge the trial court's finding on statutory grounds.

paramount.""" *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002))).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re N.L.D.*, 412 S.W.3d at 819 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d at 807. However, "the *Holley* factors are not a checklist." *In re C.C.*, No. 06-25-00004-CV, 2025 WL 2147793, at *10 (Tex. App.—Texarkana July 30, 2025, no pet.). "Consequently, the fact-finder may choose to give greater weight to one factor over others." *Id.* (citing *In re C.H.*, 89 S.W.3d at 27). Further, in the best-interest analysis, we may consider evidence used to support the grounds for termination of parental rights. *In re C.H.*, 89 S.W.3d at 28. We review these factors using the legal and factual sufficiency standards of review above.

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that" termination of the parent-child relationship was in the best interests of the

4

child. *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d. at 25) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002))).

"If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). To make this determination, we "undertake '"an exacting review of the entire record with a healthy regard for the constitutional interests at stake."'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)).

5

## II.    The Evidence at Trial

Devoshia Jefferson, an investigator with the Department, testified that Mother "tested positive for methamphetamines, amphetamines, and THC" when Jimmy was born and that Jimmy also tested positive for "amphetamines and THC."  Medical reports showed that, because of Mother's drug use, Jimmy was born with hypoxia, was in danger of sepsis, and "had to remain in the neonatal intensive [care] unit for oxygen issues."  Jefferson testified that Mother admitted to using marihuana but did not admit to methamphetamine use.

Sheniqua Evans, a permanency specialist with the Department, testified that Mother did not appear at a scheduled family group conference to receive updates about the case and the Department's concerns.  Soon after, Mother was jailed for unknown charges and remained in jail at the time of trial with an anticipated release not due until five months after trial.  Evans testified that Mother received the family service plan, which was "tailored toward incarcerated parents," and that she attempted to talk to Mother about it during the pendency of the case.

Evans testified that Mother's incarceration prevented her from providing Jimmy with a "safe and stable" environment.  As a result, Jimmy was placed with his paternal cousin, Dan, and his wife, Tilly.  Evans testified that Jimmy had "blossomed" in their care and was bonded to the couple, who wished to adopt him.  According to Evans, it was in Jimmy's best interests to terminate Mother's parental rights and to remain with Dan and Tilly.

Joey Keilbach, a Court Appointed Special Advocate, testified that Jimmy was thriving in his "very healthy, loving placement."  Keilbach testified that he wrote Mother a letter while she

was in jail, and Mother responded by saying that she wanted to work a family service plan when she was released but wished for Jimmy to be placed with Dan and Tilly.

Because of Mother's incarceration, she was unable to visit Jimmy or timely complete a family service plan and substance abuse treatment program. Ultimately, Jefferson and Evans testified that termination of Mother's parental rights was in Jimmy's best interests. The trial court agreed.

## III.     Analysis of the *Holley* Factors

The first *Holley* factor considers the desires of the child, but the record shows that Jimmy was not even a year old at the time of trial and could not express his wishes. Even so, Jimmy was removed from Mother at birth, Mother was unable to visit Jimmy due to her incarceration, and Jimmy became bonded to Dan and Tilly. As a result, the record before us contains sufficient evidence as to the first *Holley* factor to support the trial court's best-interest finding. *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied).

As for the next three factors, we consider whether "a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment." *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied). "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest." *Id.* While the emotional and physical needs of Jimmy now and in the future were great given his young age, Mother had no means to provide for them because she was incarcerated and could not physically be with Jimmy. The evidence at trial showed that Mother placed the child in physical danger by using methamphetamine and marihuana during her pregnancy, which demonstrated

7

that Mother exercised poor judgment and lacked parenting skills. As a result, Evans testified that Mother posed a danger to Jimmy and could not provide for his emotional and physical needs, but that Dan and Tilly were meeting those needs. Accordingly, the record before us contains sufficient evidence as to the second, third, and fourth *Holley* factors to support the trial court's best-interest finding.

As for the fifth factor, Evans testified that she tailored Mother's family service plan because of her incarceration and informed Mother of programs available to help her such as parenting classes, psychological evaluation, and drug treatment. Even so, the record shows that Mother had not taken advantage of those programs. As a result, the record before us contains sufficient evidence as to the fifth *Holley* factor to support the trial court's best-interest finding.

The sixth and seventh factors consider the plans for the child and stability of the home. While Mother could not provide a "safe and stable" home for Jimmy due to her incarceration, Evans testified that Dan and Tilly did so. Mother's plan was to hopefully be released from incarceration so that she could begin working the family service plan and for Jimmy to be placed with Dan and Tilly in the meantime. The Department's plan was to terminate Mother's parental rights so that Jimmy could be adopted by Dan and Tilly. Because there was no guarantee of Mother's success either with a family service plan or with a drug treatment program, the record before us contains sufficient evidence as to the sixth and seventh *Holley* factors to support the trial court's best-interest finding.

As for the last two factors, Mother's drug use during her pregnancy, her absence at a scheduled family group conference, and her failure to work a family service plan "tailored

8

toward incarcerated parents" showed that the existing parent-child relationship was not a proper one. Further, Mother had no excuse for her drug use or the criminal charge that resulted in her incarceration for the pendency of the case. Accordingly, the record before us contains sufficient evidence as to the remaining *Holley* factors to support the trial court's best-interest finding.

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the evidence was sufficiently clear and convincing such that a reasonable fact-finder could have formed a firm belief or conviction that termination of the parent-child relationship between Mother and Jimmy was in the child's best interests. As a result, we overrule Mother's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    September 16, 2025
Date Decided:      October 16, 2025

9