

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00020-CV
_____

IN THE INTEREST OF A.B. AND D.B., CHILDREN

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2020-1859-DR

Before Stevens, C.J., Rambin and Morriss,* JJ.
Memorandum Opinion by Chief Justice Stevens

_____

*Josh R. Morriss, III, Chief Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights to their children, Amanda and Darren.[1]  Following a bench trial, the trial court terminated Mother's and Father's parental rights after finding that (1) they knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, (2) they engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, (3) they failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the children's return, as described in Section 161.001(b)(1)(O) of the Texas Family Code, (4) they used a controlled substance in a manner that endangered the health or safety of the children, as described in Section 161.001(b)(1)(P), and (5) termination of their parental rights was in the children's best interests.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P), (b)(2) (Supp.).

On appeal, Mother and Father argue that the evidence is legally and factually insufficient to support the trial court's findings that there were statutory grounds to terminate their parental rights and that doing so was in the children's best interests.[2]  We conclude that the evidence presented at trial supported the trial court's findings.  As a result, we affirm the trial court's judgment terminating Mother's and Father's parental rights to Amanda and Darren.

---

[1]We use pseudonyms to protect the identity of the children. *See* TEX. R. APP. P. 9.8.

[2]Our original opinion in this matter dismissed Father's appeal for want of jurisdiction.  After denying Mother's petition in this matter, the Texas Supreme Court reversed our judgment, including our disposition on the merits of Mother's appeal. *In re A.B.*, No. 22-0864, 2023 WL 5986567, at *2 (Tex. Sept. 15, 2023) (per curiam).  As a result, we address the merits of the appeal of both parents in this opinion.

# I.    A Statutory Ground for Termination of Mother's and Father's Parental Rights is Supported by Legally and Factually Sufficient Evidence

## A.    Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child[ren]'s best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE

ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 108); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we

4

must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at \*3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

### B. Sufficient Evidence Supports the Ground E Findings as to Mother and Father

By their first issues, Mother and Father assert that the evidence is legally and factually insufficient to support the trial court's findings under grounds D, E, O, and P. "Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child[ren]'s best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d at 362)). Even so, when the trial court's findings under grounds D or E are challenged on appeal, due process demands that we review the evidence supporting the findings under at least one of those grounds. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019)

5

(per curiam) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under [S]ection 161.001(b)(1)(D) or (E) of the Family Code."). This is because termination of parental rights under these grounds may implicate the parent's parental rights to other children. *Id.* at 234; *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (Supp.) (providing as a ground for termination of parental rights that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)").

Ground E permits the termination of a parent's parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct . . . which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d at 803. "'Endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re L.E.S.*, 471 S.W.3d at 923; *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.). "It is not necessary that the conduct be directed at the child[ren] or that the child[ren] actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923. Under ground "(E), it is sufficient that the child[ren]'s well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367). "Further, termination under [ground] (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v.*

6

*Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)); *see Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67.

Ground E "refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied); *see In re N.S.G.*, 235 S.W.3d at 366–67. "The conduct to be examined includes what the parent did both before and after the child was born." *Id.* at 902; *see In re N.S.G.*, 235 S.W.3d at 367. The endangering conduct may also occur "either before or after the child[ren]'s removal by the Department." *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

"'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under' Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.)). "Drug use and its effect on a parent's life and his [or her] ability to parent may establish an endangering course of conduct." *Id.* (quoting *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.)); *see In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of

endangering the child."). In our analysis under ground E, we may also consider a parent's failure to complete relevant requirements of a family service plan. *In re Z.J.*, 2019 WL 6205252, at *11; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.).

The evidence at trial established a continued pattern of domestic violence and drug use. Kimberly Degrasse, an investigator with the Department, testified (1) that the Department received an intake alleging that Mother and Father engaged in domestic violence, (2) that Father had punched out a window causing shards of glass to land on a bed near Darren, and (3) that Darren was left on the bed with the glass because Mother was not paying attention to him. The intake further alleged that Mother was under the influence of a substance and that there was a strong smell of marihuana emanating from Mother's apartment.

At trial, Mother admitted that Amanda and Darren had witnessed incidents of domestic violence between her and Father.[3] According to Degrasse, Mother also admitted that Father had punched out the window when he was questioned about the intake. The children's grandmother testified that Mother and Father were constantly arguing and bickering. Their great-grandmother testified that Mother and Father would "scream and holler and call each other names and say degrading things to each other," and she believed that Mother and Father should not be left alone with the children until their behavior improved. Degrasse said that there had been additional incidents of domestic violence since the initial intake and added that Mother had shown her "numerous bruises, including bruises on her shoulder, arm, wrist, and hands." The trial court

---

[3]Father did not testify.

8

noted that his docket sheet showed that Father "broke [M]other's . . . car window two weeks" before trial. Even so, Mother testified that she intended to continue living with Father and wanted to remain married to him.

Mother also admitted that she was a drug addict. The Department's petition in this case was filed in October 2020, after Darren tested positive for methamphetamine. Dawn Hahn, a laboratory director at Quest Diagnostics, testified that Mother and Father both had tested positive for amphetamines, methamphetamine, and marihuana metabolite in November 2020 and February 2021. The trial court read from its docket sheet, which showed that Father "missed three meetings" for drug treatment and "was positive for meth, cocaine, and weed in January." According to Hahn, Mother also tested positive for the same drugs in March, and Father tested positive for amphetamines and methamphetamine in July. The court also noted that Father tested positive for drugs on November 3.

According to Shandra Newill, the Department's conservatorship caseworker, Mother and Father "tested positive after receiving extensive services." At the December 29, 2021, trial, Mother admitted that she relapsed after going to rehabilitation and that she used drugs in September. Newill testified that Mother failed to complete a drug test on October 21, 2021, and both Mother and Father failed to complete drug tests requested on November 23, December 1, and December 9, 2021. Newill testified that Father was arrested in November and again in December and that both Father and Mother, who were still married, were living together in Father's parents' home. In the middle of Mother's testimony, the trial court continued the trial until February 21, 2022. Newill requested that Mother and Father take a drug test on

9

December 30, 2021, but testified that they failed to complete it. By that time, the record showed, Mother was facing a pending drug charge.

At the continued February 2022 trial, Mother admitted that she had been arrested for fraudulent use or possession of identifying information. Mother also admitted that there had been a fresh incident of domestic violence but stated that she had called the police and obtained a no-contact order against Father, who was still incarcerated. Mother testified that she was injured during the incident, had bled profusely, and was afraid of Father. Even so, Mother was still living with Father's parents and wearing her wedding ring, and she did not definitively answer whether she would divorce Father but instead said, "[T]he answer that I'm going to give for that is that at this point, this day in time, given for my kids, I'm going to have to let him go."

While Mother had made progress on many aspects of her family service plan, Newill testified that Mother had not yet successfully completed the court-ordered drug treatment program. Tina Huseth, a licensed chemical dependency counselor, testified that Mother was also unable to complete "individual counseling due to the fact of the ongoing substance use and exposure to domestic violence" and that she was unsuccessfully discharged from Huseth's services. Huseth said that Mother had reported that Father had taken all her money and clothes, that she had no food, and that she was afraid that Father would kill her. Huseth was also concerned that Mother and Father associated with unsavory individuals that presented a concern for the safety of the children. According to Huseth, Mother was unable to demonstrate that she could protect herself or the children, and Mother said that Father had even "showed up with a gun at one point."

10

At trial, Mother admitted that she was unemployed, Father was incarcerated, and Newill testified that neither parent could provide for the children financially or maintain stable housing. Because of their ongoing, unaddressed problems, witnesses from the Department and Tara Peck, the Court Appointed Special Advocate (CASA) supervisor, testified that termination of Mother's and Father's parental rights was in the children's best interests.

"A parent's failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under [ground] (E) even if there is no direct evidence that the parent's drug use actually injured the child." *In re H.M.J.*, 2018 WL 3028980, at *5 (quoting *In re J.A.W.*, No. 02-08-215-CV, 2009 WL 579287, at *4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.)). From the above-recited evidence, we conclude that the record firmly established that Mother's and Father's continued drug use and pattern of domestic violence, which the children had witnessed in the past, constituted a course of conduct that endangered the children's physical and emotional well-being. As a result, we find that legally and factually sufficient evidence supported the trial court's finding under ground E as to both parents.

Since there was sufficient evidence supporting the trial court's finding under ground E, we need not review its findings under grounds D, O, and P. *See J.T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-21-00070-CV, 2021 WL 2672055, at *9 (Tex. App.—Austin June 30, 2021, no pet.) (mem. op.); *In re M.F.*, No. 14-19-00964-CV, 2020 WL 2832166, at *8 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. denied) (mem. op.). We overrule Mother's and Father's first points of error.

11

## II.	Sufficient Evidence Supports the Trial Court's Best-Interest Finding

Next, Mother and Father argue that legally and factually sufficient evidence fails to support the trial court's finding that termination of their parental rights was in Amanda's and Darren's best interests.  Because we disagree, we overrule Mother's and Father's last points of error.

### A.	Standard of Review

"There is a strong presumption that keeping a child with a parent is in the child's best interest."  *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)).  "Termination 'can never be justified without the most solid and substantial reasons.'"  *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b).

The Department is not required to present proof of each *Holley* factor.  *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).

12

"When considering the child[ren]'s best interest[s], we may take into account that a parent is unable to provide adequate care for [her] child[ren], lacks parenting skills, or exercises poor judgment." *Id.* (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.)). "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child[ren]'s best interest[s]." *Id.* (citing *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.)). The parent's "past performance as a parent [is] relevant in determining the child[ren]'s best interest[s]." *Id.* (citing *In re C.H.*, 89 S.W.3d at 28). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d at 28.

## B.     Analysis of the *Holley* Factors

As for the first *Holley* factor, Amanda was four years old and Darren was three years old at trial, and there was no evidence of their express desires. Even so, as to Mother, Newill testified that Mother regularly visited with the children, who seemed happy to see her. Mother testified that she and the children loved each other, and the children's grandmother testified that Amanda and Darren had a strong bond with Mother, who was attentive and loving. Given this evidence, "[w]e find that the first *Holley* factor weighs against termination" of Mother's parental rights. *See In re Z.M.*, 456 S.W.3d 677, 689 (Tex. App.—Texarkana 2015, no pet.) (citing *In re E.N.C.*, 384 S.W.3d at 808).

In contrast, there was no testimony about Father's bond with Amanda and Darren. Peck testified that the foster family was calm, loving, nurturing, and happy. In part due to the stable environment provided by the foster family, Peck testified that the children were bonded to them.

13

As a result, as to Father, we find that the first *Holley* factor weighs in favor of terminating Father's parental rights to the children. *See In re K.O.*, 488 S.W.3d 829, 842 (Tex. App.— Texarkana 2016, pet. denied).

As for the second *Holley* factor, Mother admitted that Amanda and Darren had witnessed domestic violence between Mother and Father, and Newill testified that the children did "exhibit behaviors of children that [had] been exposed to domestic violence." Both Newill and Megan Bourgeois, the CASAs, testified that the children were suffering from "emotional problems" and required counseling.[4] That testimony established that the needs of Mother and Father's young children were great. We find that the second *Holley* factor weighs in favor of terminating both Mother's and Father's parental rights.

As to the third, fourth, and fifth *Holley* factors, "[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct." *Id.* (quoting *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2014, pet. denied) (mem. op.)). Mother and Father continued to use drugs during the pendency of the case, and Bourgeois testified that neither Mother nor Father had a stable income or home. *See In re Z.M.*, 456 S.W.3d at 689 ("A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.") (quoting *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.)). The children were exposed to domestic violence in Mother's and Father's care, and Darren tested positive for methamphetamine, either as a result of Mother's or Father's drug use or their failure to protect

---

[4]Kara Jenkins, the children's foster mother, discussed the children's counseling and said that they exhibited anger, sensitivity, and irritability after visits with Mother.

14

the children from exposure to the other parent's drug use. While the Department provided Mother and Father with services and programs designed to assist them, the record showed that they had limited to no impact on Mother's or Father's behavior. Huseth testified that Mother and Father had completed anger management and surviving domestic violence counseling, but the record showed that Mother and Father continued living together after the pendency of the case despite repeated acts of domestic violence. Father had broken Mother's car window two weeks before trial and was incarcerated at the time of trial, but Mother testified that she might live with Father's parents, where she could potentially be exposed to further domestic violence. Degrasse testified that Mother "did not seem to understand the dangers and the risk that she was putting the children in." Because Mother was unable to protect herself from Father, Huseth, Newill, and Bourgeois all testified that Mother still presented a threat to the physical and emotional well-being of the children and would be unable to provide them with a safe environment. Although Mother and Father had completed parenting classes, Bourgeois was concerned with Mother's interactions with the children because Mother would "be doing tasks, like setting out food or . . . pulling something up on her phone instead of actually getting down and engaging with her kids." Peck testified that Father brought a woman who was not vetted by the Department, and appeared to be under the influence of drugs, to a scheduled visit with the children. Most importantly, even after attending rehabilitation, Mother relapsed and was facing a pending drug charge, and nothing showed that Father had or could remain drug free. We find that the third, fourth, and fifth *Holley* factors weigh in favor of terminating Mother's and Father's parental rights.

15

As for the sixth and seventh *Holley* factors, Bourgeois testified that the children were placed with foster parents who provided a safe, stable, and loving environment for them. Jenkins, the children's foster mother, testified that Amanda and Darren had bonded with the foster family, discussed their daily routine, and said that they were attending a daycare with an emphasis on early education. Jenkins testified that they were "invested in the long term" and had discussed the possibility of adopting the children. Mother either planned to remain in Father's parent's home or would go to a women's center. Because Mother was exposed to Father's domestic violence in his parent's home, it was not considered to be a stable environment. Although Mother said that she could obtain "six months of transitional housing," Mother's plan for the children after that was unclear. Because Father did not testify, there was no evidence of his plans for the children.[5] We find that the sixth and seventh *Holley* factors weigh in favor of termination of Mother's and Father's parental rights.

As for the remaining eighth and ninth factors, Mother's and Father's acts and omissions discussed above, including their continued drug use, indicated that the existing parent-child relationship was not appropriate. Although Mother initially claimed that she failed to drug test due to a lack of transportation, she later acknowledged that she could have taken the bus to the drug testing facility. There was no excuse for either Mother's or Father's positive drug tests during the pendency of the case.

Considering the *Holley* factors, and in light of all of the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Mother's and Father's

---

[5]The children's grandmother testified that Father was welcome to live with her when he was released from incarceration but only if the children were not placed with her.

16

parental rights was in Amanda's and Darren's best interests. Therefore, we conclude that the evidence was sufficient to support the best-interest finding and overrule Mother's and Father's last points of error.

**III.    Conclusion**

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    October 31, 2023
Date Decided:      November 13, 2023