

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00035-CV
_____

IN THE INTEREST OF R.G., A CHILD

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 91576

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights to their daughter, Raynese.[1]  Following a bench trial, the trial court terminated Mother's and Father's parental rights after finding that (1) they knowingly placed or allowed Raynese to remain in conditions or surroundings that endangered her physical or emotional well-being, (2) they engaged in conduct or knowingly placed Raynese with persons who engaged in conduct that endangered her physical or emotional well-being, (3) they constructively abandoned Raynese, (4) they "failed to comply with the provisions of a court order that specifically established the actions necessary" to obtain Raynese's return, as described in Section 161.001(b)(1)(O) of the Texas Family Code, and (5) termination of their parental rights was in the child's best interests.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (b)(2) (Supp.).

On appeal, Mother and Father both argue that the evidence was insufficient to support a ground of termination.  While Mother does not challenge the best-interest findings as to her, Father argues that the trial court erred by finding that termination of his parental rights was in Raynese's best interests.  Mother and Father also argue that the trial court erred by terminating their parental rights based on grounds N and O because the Department's petition failed to plead those statutory grounds and the issue was not tried by consent.  Father alternatively argues that his counsel rendered ineffective assistance.  Lastly, Father argues that the trial court erred by failing to provide a statutory warning in open court designed to notify Father that his parental

---
[1]We use pseudonyms to protect the identity of the child.  *See* TEX. R. APP. P. 9.8.

rights were subject to termination if he was unwilling or unable to provide Raynese with a safe environment.

We find that sufficient evidence supported the trial court's finding that Mother's and Father's parental rights should be terminated under ground E and that doing so was in Raynese's best interests. Even so, we sustain Mother's and Father's points of error arguing that parental-rights termination under grounds N and O was unsupported by the pleadings. As a result, we modify the trial court's judgment to remove those grounds. Because our findings on those issues are dispositive of this appeal, we overrule the remaining points of error and affirm the trial court's judgment.

**I.  A Statutory Ground for Termination of Parental Rights is Supported by Legally and Factually Sufficient Evidence**

In their first points of error, Mother and Father both assert that the evidence was legally and factually insufficient to support the trial court's findings that statutory grounds existed to support the termination of their parental rights.

**A.  Standard of Review**

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "This Court is . . . required to

3

'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009))). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

4

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108); *see In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we must undertake '"an exacting review of the entire record with a healthy regard for the constitutional interests at stake."'" *Id.* (alteration in original) (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109). When, as in this case, "findings of fact and conclusions of law are not properly requested and none are filed, the trial court's judgment implies all findings of fact necessary to support it." *In re Z.E.*, No. 05-22-01337-CV, 2023 WL 3595627, at *5 (Tex.

App.—Dallas May 23, 2023, pet. denied) (mem. op.) (citing *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017)).[2]

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002))).

## B.    The Evidence at Trial

Tiffany Massey, an investigator for the Department, testified that Mother and Father "had previous removals and termination of their parental rights" to other children. As a result, Massey said that the Department became concerned when Raynese was born to Mother and Father in September 2022. According to Massey, Mother was "intellectually disabled, ha[d] a lower IQ, [and] ha[d] trouble meeting her daily needs for herself," and both Mother and Father were unemployed and "did not have gas money." Due to those factors, Massey said that Mother and Father, who "were both responsible for [Raynese's] feedings," were unable to meet the baby's nutritional needs, causing her to lose weight. Massey added that Father, who had a history with

---

[2] We note that, without any citation to relevant caselaw, analysis, or discussion of harm, Father argues, in a conclusory manner, that his counsel "failed to request that the trial court issue findings of fact and conclusions of law." When a party provides no argument or legal authority to support his appellate position, the issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

6

marihuana, had tested positive again. As a result, Massey obtained an order from the trial court requiring Mother and Father to participate in family-based safety services on December 7, 2022.

Amber Ivey, a family-based safety services supervisor, testified that Raynese's doctor "had concerns during the investigation that [Mother and Father] weren't mixing the formula correctly, that they were diluting it." According to Ivey, Mother was shown how to mix the baby formula appropriately but still struggled to do so, causing Raynese to drop "from [the] 7th percentile in her weight to the 5th percentile in her weight."

It soon became apparent that Mother and Father were unable to care for the child when, according to Ivey, the Department learned that Mother and Father had decided to let Raynese stay with a friend, Ashley, who began taking care of the child. Ivey testified that Mother and Father's decision to let their newborn stay with Ashley caused "concern [over] how much attachment [was] really there and how much . . . [they were] willing to provide for [Raynese]," especially since they had not participated in their court-ordered services. Monique Andretti, a Child Protective Services (CPS) caseworker, testified that Raynese was removed from Ashley's home, which was "filthy," had roaches "crawling all over the walls," and posed "a health hazard for the child."

When discussing the parents' progression with the court-ordered, family-based safety services, Andretti testified that Mother had completed parenting classes. Even so, Mother and Father were ordered to obtain employment and go to counseling but failed to do so. Mother was also ordered to undergo an East Texas Council on Alcoholism and Drug Abuse (ETCADA) assessment but did not. Although Mother was granted weekly visits, she only visited five times

in seven months due to, among other things, lack of transportation. Andretti said Court Appointed Special Advocates (CASA) went over the bus schedules with Mother to allow her to make her appointments, but Mother often failed to use the bus. According to Andretti, Father missed drug tests and was unable to provide the Department with a negative drug test, which was required to allow him to visit Raynese. As a result, Father had not seen Raynese in fourteen months. When Father took a hair-follicle drug test in January 2024, he tested positive for cocaine. While he admitted to smoking marihuana, which he obtained from Oklahoma, he denied ever using cocaine.

According to Andretti and Julie Pursley, a CASA volunteer, Mother and Father's apartment building strongly smelled of smoke, and Raynese's doctor did not believe the apartment would provide a good atmosphere for the child in light of her asthma. Because they could not meet Raynese's needs, Andretti testified that termination of Mother's and Father's parental rights was in the child's best interests.

Mother, who had a ninth-grade education, testified that, as her payee, Father received, from her Social Security disability, approximately $400.00 per month after rent was paid. Mother admitted that she would need assistance in raising Raynese if she were returned to her. Father testified that he had stopped living with Mother in the hopes that the child would be returned to her.

### C. Sufficient Evidence Supports the Ground E Findings

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best

8

interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.))). Even so, when the trial court's findings under grounds D or E are challenged on appeal, due process demands that we review the evidence supporting the findings under at least one of those grounds. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under [S]ection 161.001(b)(1)(D) or (E) of the Family Code."). This is because termination of parental rights under these grounds may implicate the parent's parental rights to other children. *Id.* at 234; *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (Supp.) (providing as a ground for termination of parental rights that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)").

Ground E permits the termination of a parent's parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "'[E]ndanger' means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment . . . ." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.— Texarkana 2007, no pet.); *see In re L.E.S.*, 471 S.W.3d at 923. "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d

at 923. Under ground "(E), it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367). "Further, termination under [ground] (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.))); *see Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67.

Ground E "refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied); *In re N.S.G.*, 235 S.W.3d at 366–67. The endangering conduct may also occur "either before or after the child's removal by the Department." *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Here, the Department established that Mother and Father had previously lost their parental rights to other children. While in their care, Raynese became malnourished and kept losing weight despite Mother and Father receiving instruction on how to properly feed the child. The failure to properly feed Raynese jeopardized her health and placed her in the bottom fifth percentile of weight in her age group. Neither Mother, who was intellectually disabled, nor Father had stable employment and, because they were unable to care for Raynese, eventually

decided to allow Ashley to care for their newborn. However, Andretti testified that Ashley's home was filthy, covered in roaches, and posed a health hazard to the child.

In our analysis under ground E, we may also consider a parent's failure to complete relevant requirements of a family service plan. *Id.*; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.). Mother and Father were told that, in order to ensure Raynese's return, they would have to obtain stable housing for the child, but their house smelled of smoke, posing a further hazard to Raynese, who had been diagnosed with asthma. Mother also failed to complete counseling or undergo an ETCADA assessment. Massey testified that Mother had difficulty meeting her own daily needs, and at trial, Mother admitted that she would need assistance to care for Raynese if she were returned to her.

Also, Father admitted to smoking marihuana, which he obtained in Oklahoma and brought back to Texas. "'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under' Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.)). Moreover, Father tested positive for marihuana and cocaine during the pendency of the case, and his "failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under [ground] (E)." *Id.* (quoting *In re J.A.W.*, No. 2-08-215-CV, 2009 WL 579287, at *4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.) (citing *Vasquez v. Tex. Dep't*

11

*of Protective & Regul. Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied))).

Based on the testimony at trial, the trial court could find, by clear and convincing evidence, that both Mother and Father engaged in a course of conduct that endangered Raynese's physical well-being. Since there was sufficient evidence supporting the trial court's finding under ground E, we need not review its findings under ground D. *See J.T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-21-00070-CV, 2021 WL 2672055, at *9 (Tex. App.—Austin June 30, 2021, no pet.) (mem. op.); *In re M.F.*, No. 14-19-00964-CV, 2020 WL 2832166, at *8 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. denied) (mem. op.). We overrule Mother's and Father's first points of error.

## II. Sufficient Evidence Supports the Trial Court's Best-Interest Finding

Next, Father argues that the evidence was legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the child's best interests. After reviewing the record, we disagree.

### A. Standard of Review

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination '"can never be justified without the most solid and substantial reasons."'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

12

In determining the best interests of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 819 (citing *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d at 807; TEX. FAM. CODE ANN. § 263.307(b).

The Department is not required to present proof of each *Holley* factor. *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). "When considering the child's best interest[s], we may take into account that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment." *Id.* (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.)). "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest[s]." *Id.* (citing *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.)). "[T]he parent's . . . past performance as a parent [is] relevant in determining the child's best interest[s]." *Id.* (citing *In re C.H.*, 89 S.W.3d at 28). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

B.     **Analysis of the *Holley* Factors**

As for the first factor, Raynese was eighteen months old at trial and was too young to communicate her desires. Even so, Andretti testified that Raynese was bonded with both her

13

Mother and foster mother but had no bond with Father. The record shows that Father had not seen Raynese for fourteen months. As a result, the first *Holley* factor weighs in favor of terminating Father's parental rights to his child. *See In re K.O.*, 488 S.W.3d 829, 842 (Tex. App.—Texarkana 2016, pet. denied).

Next, while the emotional and physical needs of Raynese now and in the future were great given her young age, the evidence at trial showed that Father had placed Raynese in physical danger by failing to feed her appropriately. He also demonstrated a lack of parental ability by placing the newborn with Ashley, without the Department's knowledge, after being unable to care for her. Ivey said that Raynese had been diagnosed with asthma and had frequent ear infections, which would require medical treatment, but according to Massey, Father was unemployed and "did not have gas money." Father had recently moved out of Mother's apartment, was living with his mother, and claimed to make $400.00 per month from "personal construction . . . [for] family members or friends of family members." Even so, Father testified that he did not intend to live with Raynese and Mother.

Considering that testimony, Father's history with Raynese, and the fact that he had lost parental rights to other children, the trial court was free to conclude that Father would not adequately provide for Raynese's physical and emotional needs. *See In re J.M.*, 603 S.W.3d 163, 171 (Tex. App.—Texarkana 2020, no pet.) ("Evidence of past misconduct or neglect can be used to measure a parent's future conduct." (quoting *In re Z.M.*, 456 S.W.3d 677, 689 (Tex. App.—Texarkana 2015, no pet.))) Also, the trial court could find that Father lacked parental abilities because Father contributed to Raynese's malnourishment, left her to be cared for by

Ashley, could not provide a negative drug test so that he could visit Raynese, and wished for the child to return to Mother, who had her own disabilities and difficulty caring for herself. Accordingly, we find that the second, third, and fourth *Holley* factors favor terminating Father's parental rights.

As for the programs available to assist Father, Father testified that he had applied for Social Security benefits after he sustained a back injury, was denied, but was trying to reapply with help from his mother. Because he had previously been denied, nothing was guaranteed. Further, the Department testified that it had counseling programs available to assist Father, but he had failed to take advantage of them. We find that the fifth *Holley* factor weighs against Father.

As for the sixth and seventh factors, Father did not plan for the child to live with him. Instead, he wanted the Department to place Raynese with Mother. That was contrary to the Department's plan. Because Raynese was bonded to her foster mother, who had a stable home and was able to take care of all the child's needs, both the Department and CASA believed that it was in the child's best interests to terminate parental rights so that she could remain in the stable foster home. Pursley also indicated that Raynese's foster family might adopt her. Given that the trial court could find that Mother's intellectual disability, which led her to endanger Raynese's physical health, was not something that could be resolved, we find that the Department's plan for Raynese to remain in a stable foster home was in the child's best interests. Accordingly, we find that the sixth and seventh *Holley* factors weigh in favor of terminating Father's parental rights.

15

As for the last two *Holley* factors, Father's many acts and omissions, for which he had no excuse, indicated that the existing parent-child relationship was not a proper one. Father's parental rights to his other children had been terminated. Despite knowing that he had to submit negative drug tests to visit Raynese, Father missed many drug tests, tested positive for cocaine, and admitted to using marihuana, which he smuggled from Oklahoma, up to two months before trial. Father denied using cocaine, but when asked if marihuana were more important than Raynese, Father replied, "Me being able to move around and support was more important." Given that Father could have obtained pain relief from legal means, the trial court could have determined that Father's excuse was a poor one and that the excuse, combined with his plan to leave Raynese with Mother, showed that the parent-child relationship was not appropriate.

After weighing the *Holley* factors, we conclude that legally and factually sufficient evidence supported the trial court's best-interests finding against Father. As a result, we overrule Father's second point of error.

## III. Parental-Rights Termination Under Grounds N and O Was Unsupported by the Pleadings

The Department's petition did not seek to terminate Mother's and Father's parental rights under grounds N or O. It was not until after the trial had concluded that the Department first announced, during closing argument, that it was seeking termination of parental rights based on grounds N and O. Consequently, Mother and Father argue that the trial court erred by terminating their parental rights on those grounds.

"The Supreme Court of the United States and the Supreme Court of Texas have recognized that involuntary termination of parental rights involves fundamental constitutional

16

rights." *In re J.W.*, No. 06-21-00098-CV, 2022 WL 319868, at *2 (Tex. App.—Texarkana Feb. 3, 2022, no pet.) (mem. op.) (quoting *In re S.R.M.*, 601 S.W.2d 766, 769 (Tex. App.— Amarillo 1980, no pet.) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972))). "As a result, when the Department seeks to permanently terminate the relationship between a parent and a child, it must observe fundamentally fair procedures." *Id.* (citing *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982))). "The most basic of these is notice." *Id.* (quoting *In re E.R.*, 385 S.W.3d at 554).

Also, "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he [or she] may be entitled either in law or equity." *Id.* (alterations in original) (quoting *In re P.M.G.*, 405 S.W.3d 406, 416 (Tex. App.—Texarkana 2013, no pet.) (quoting TEX. R. CIV. P. 301)). "Because the party's pleadings invoke the trial court's jurisdiction to render a judgment, an order not supported by the pleadings is void for lack of jurisdiction." *Id.* (quoting *In re P.M.G.*, 405 S.W.3d at 416–17) (explaining that error preservation is not required to raise the issue of whether a judgment comports with the pleadings); *see In re A.V.*, No. 13-14-00620-CV, 2015 WL 1957093, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2015, no pet.) (mem. op.); *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.) ("A court's jurisdiction to render judgment is invoked by pleadings, and a judgment unsupported by pleadings is void." (quoting *Ex parte Fleming*, 532 S.W.2d 122, 123 (Tex. App.—Dallas 1975, orig. proceeding))). "Since '[a] judgment, absent issues tried by consent, must conform to the

pleadings,' relief 'may not be granted in the absence of pleadings to support that relief.'" *In re J.W.*, 2022 WL 319868, at \*2 (alteration in original) (quoting *In re P.M.G.*, 405 S.W.3d at 417).

Here, the State argues that we should apply the trial-by-consent doctrine, which is "intended to cover the exceptional case in which it clearly appears from the record as a whole that the parties tried the [unpled] issue." *Id.* at \*4 (alteration in original) (quoting *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.) (citing *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997), *pet. denied*, 989 S.W.2d 363 (Tex. 1999)). "The doctrine of trial by consent is not intended to establish a general rule of practice and should be applied with care; it should never be applied in a doubtful situation." *Id.* (quoting *In re A.V.*, 2015 WL 1957093, at \*4 n.8).

"To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue." *Id.* (quoting *In re A.B.H.*, 266 S.W.3d at 600 (citing *RE/MAX of Tex., Inc.*, 961 S.W.2d at 328)). "Consent may be found only where evidence regarding a party's unpleaded issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Id.* (quoting *In re A.B.H.*, 266 S.W.3d at 600). We do not find such circumstances here.

In this case, although the Department introduced evidence at trial relevant to grounds N and O, such evidence was also relevant to the course of conduct necessary to support a finding under ground E. Moreover, evidence relevant to the issue of abandonment and failure to follow the court-ordered, family-based service plan was also relevant to the best-interests finding.

18

Because "[e]vidence relevant to other pled causes of action [or grounds] does not amount to trial by consent," we do no find that Mother and Father consented to go to trial on unpled grounds N or O. *Id.* (first alteration in original) (quoting *RE/MAX of Tex., Inc.*, 961 S.W.2d at 328).

We sustain Mother's and Father's points of error complaining of the grounds N and O findings in the absence of any pleadings by the Department seeking such findings. As a result, we must modify the trial court's judgment by deleting those findings.[3,4]

## IV.    Disposition

We modify the trial court's judgment by deleting grounds N and O as a basis for termination of Mother's and Father's parental rights. As modified, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:        September 3, 2024
Date Decided:          September 11, 2024

[3]By separate point, Father argued that his counsel rendered ineffective assistance by failing to object to the Department's attempt to terminate parental rights on unpled grounds. Our ruling that grounds N and O must be removed as a basis for terminating Mother's and Father's parental rights is dispositive of this point of error.

[4]"Chapter 262 [of the Texas Family Code] authorizes a trial court to enter emergency orders and other temporary orders." *In re D.W.*, 533 S.W.3d 460, 464 (Tex. App.—Texarkana 2017, pet. denied) (citing TEX. FAM. CODE ANN. §§ 262.102–.103). Father also raises a point of error on the basis that the trial court did not provide a statutory admonishment during the Chapter 262 adversary hearing "in open court that parental and custodial rights and duties may be subject to restriction or to termination unless the parent or parents are willing and able to provide the child with a safe environment." TEX. FAM. CODE ANN. § 262.201(m) (Supp.). Similar admonishments are required at status hearings and permanency hearings after the Department has been named temporary managing conservator of a child. TEX. FAM. CODE ANN. § 263.006. The statutory warnings Father asserts were required pertain to the trial court's temporary orders under Chapter 262 and 263. Because the trial court issued a final order terminating parental rights under Chapter 161, any issues regarding the temporary orders are moot. *See In re J.J.R.S.*, 627 S.W.3d 211, 225 (Tex. 2021) (finding Mother's Chapter 262 complaint moot on entry of final judgment regarding Mother's parental rights).

19