

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00049-CV

_____


IN THE INTEREST OF Y.B. AND N.W., CHILDREN


On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 92561


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's parental rights to her children, Yasmin and Nellie.[1]  The trial court terminated Mother's parental rights after finding that (1) she "knowingly placed or . . . allowed the child[ren] to remain in conditions or surroundings [that] endanger[ed their] physical or emotional well-being," (2) she "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct [that] endanger[ed their] physical or emotional well-being," (3) she "failed to comply with the provisions of a court order that" established what she needed to do to obtain the children's return, (4) she "used a controlled substance . . . in a manner that endangered the health or safety of the child[ren]" and "failed to complete a court-ordered substance abuse treatment program," and (5) termination of her parental rights was in the children's best interests.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P), (b)(2) (Supp.).

On appeal, Mother argues that the trial court erred by finding that statutory grounds existed to terminate her parental rights and that it was not in Yasmin's or Nellie's best interests to do so.  Because ample evidence supported the trial court's findings on Ground D, Ground E, and best interests, we overrule Mother's points of error and affirm the trial court's decision.

## I.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions."  *In re L.E.S.*, 471 S.W.3d 915, 919 (Tex. App.—Texarkana 2015, no pet.) (quoting

---

[1]We use pseudonyms to protect the identity of the children.  *See* TEX. R. APP. P. 9.8.

[2]Yasmin's and Nellie's Fathers' parental rights were also terminated, but they do not appeal.

*Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* at 920 (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 919–20 (quoting *In re A.B.*, 437 S.W.3d at 500).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* at 920 (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *Id.* (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-

3

finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002))).

"If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). "'[I]n making this determination,' we must undertake '"an exacting review of the entire record with a healthy regard for the constitutional interests at stake."'" *Id.* (alteration in original) (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness'[s] demeanor and credibility, and it may believe all, part, or none of a witness'[s] testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109). "An appellate court 'cannot substitute [its] judgment for the factfinder's' when considering the credibility of

the evidence presented." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (alteration in original) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 316 (Tex. 2021)).

## II.    The Evidence at Trial

Lucretia Edwards, a family-based safety services worker with Child Protective Services, testified that the Department became involved in October 2023 after receiving reports that Mother and Yasmin's Father were "fighting with one another in front of the children." Edwards testified that the Department obtained a court-ordered family service plan requiring Mother to complete parenting classes, drug assessments, random drug testing, and psychological assessments, among other things. According to Edwards, Yasmin's Father did none of the court-ordered family service plan, but Mother completed parenting classes and some other portions of her family service plan.

Even so, the Department received four separate reports that Mother "was having several different fights with other people with the children present," "was drinking alcohol all the time, driving recklessly with the children in the car," and "was dating . . . an alleged known drug dealer" who was staying in the home with the children. Edwards testified that Mother, who tested positive for cocaine, admitted to fighting with others.

Given the concerning nature of those allegations, the Department completed a hair-follicle drug test on Yasmin and Nellie, and, according to Edwards, "[b]oth children's hair follicle[s] were positive for oxycodone and cocaine." As a result, the children were removed from Mother's care.

Ashley Adame, a permanency specialist with 4Kids4Families, testified that substance abuse, domestic violence, and life skills classes were added to Mother's family service plan. While Mother started those classes, Adame said that Mother stopped attending and did not complete the classes. Adame testified that Mother's drug assessment recommended that she complete an outpatient drug treatment program but that Mother failed to do so.[3]

During the pendency of the case, Adame learned that "there was a police report" of a new incident of domestic violence between Mother and Bud Hall, the father of the child Mother was then carrying. Mother admitted that police were called after Hall fired a shot through one of the children's bedrooms and out a window. Mother admitted that it was not a safe environment for her children. Even so, Mother testified that she was not pregnant with Hall's child at the time of the shooting but was pregnant at the time of trial with his child.

Adame testified that Mother continued to test positive for drugs during the pendency of the case. Specifically, Mother tested positive for marihuana in May 2024 and positive for cocaine in September and November 2024, January, February, and even in April 2025, just one month before the May 2025 trial. Adame testified that termination of Mother's parental rights was in the best interests of the children, whom she believed were not safe in Mother's home due to her drug use. Hannah Ray, a case supervisor for Court Appointed Special Advocates, agreed.

Adame testified that Yasmin and Nellie were placed with fictive kin, that they were "happy and well fed," and that their needs were being met in their safe and appropriate

---

[3]Mother's psychological evaluation recommended counseling, which Mother was undergoing during trial.

placement. Ray testified that the children were "bonded with their placement." Adame and Ray both testified that the placement had indicated a willingness to adopt the children.

Adame said that the children, who loved Mother, had thirty visits with her but that the visits were suspended after Mother failed to show up three times. Adame testified that the children had "some behavioral problems" in Mother's presence, "like, not listening, fighting, and . . . yelling screaming, running around the hallways [a]nd [that] mom just ha[d] a hard time redirecting the children." According to Adame, the children did not have the same behavioral issues in their placement.

Mother, who was twenty-six at trial, admitted to smoking marihuana but denied using cocaine and said she tested positive because she was "in the area around" it. Mother worked at Whataburger and had moved into a duplex where she had lived for two or three months. She wished for the children's return.

After hearing the evidence, the trial court terminated Mother's parental rights to Yasmin and Nellie.

## III. Sufficient Evidence Supports the Ground D and Ground E Findings

In her first point of error, Mother argues that the trial court erred by finding that statutory grounds to terminate her parental rights existed. "Generally, '[o]nly one predicate ground and a best interest finding are necessary for termination, so "a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground.""" *In re C.C.*, No. 06-25-00004-CV, 2025 WL 2147793, at *8 (Tex. App.—Texarkana July 30, 2025, no pet.) (alteration in original) (quoting

7

*In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam) (quoting *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam))). Even so, "due process requires that courts also review termination under Subsections 161.001(b)(1)(D) and (E) even after affirming termination on another ground because of the collateral effects of termination on those grounds." *In re M.P.*, 639 S.W.3d at 702.

Ground D permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Ground E permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d at 803. "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Boyd*, 727 S.W.2d at 533); *see In re L.E.S.*, 471 S.W.3d at 923. "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923.

When evaluating Ground D, "we are to examine the time prior to [the children's] removal to determine whether the environment of the home posed a danger to [their] physical or

8

emotional well-being." *In re D.R.*, 631 S.W.3d 826, 833 (Tex. App.—Texarkana 2021, no pet.) (alternations in original) (quoting *In re L.E.S.*, 471 S.W.3d at 926). "Ground (D) permits termination [of parental rights] based on a single act or omission [by the parent]." *Id.* (alterations in original) (quoting *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.)). "[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under [Ground] (D)." *Id.* at 834 (alterations in original) (quoting *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.)).

Under Ground "(E), it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *In re L.E.S.*, 471 S.W.3d at 923 (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367). "Further, termination under [Ground] (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.); *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67)).

"Ground E 'refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act.'" *In re R.G.*, No. 06-24-00035-CV, 2024 WL 4142842, at *5 (Tex. App.—Texarkana Sept. 11, 2024, no pet.) (mem. op.) (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied)). "The endangering conduct may also occur 'either before or after the child's removal by the Department.'" *Id.* (quoting *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth

9

Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied))). In our analysis under Ground E, we may also consider a parent's failure to complete relevant requirements of a family service plan. *In re Z.J.*, 2019 WL 6205252, at *11; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.).

"[A]busive or violent conduct by a parent or other resident of a child's home can produce an environment that endangers the physical or emotional well-being of a child." *In re L.G.*, No. 06-18-00099-CV, 2020 WL 4229330, at *6 (Tex. App.—Texarkana July 24, 2020, no pet.) (mem. op.) (alteration in original) (quoting *In re B.E.T.*, No. 06-14-00069-CV, 2015 WL 495303, at *5 (Tex. App.—Texarkana Feb. 5, 2015, no pet.) (mem. op.)). "Moreover, illegal drug use by a parent likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id.* (quoting *In re L.E.S.*, 471 S.W.3d at 925).

Here, the record shows that the Department received reports that Mother and Yasmin's Father engaged in domestic abuse in front of the children and that Mother admitted to fighting with others. Mother, Yasmin, and Nellie all tested positive for cocaine, and the children also tested positive for oxycodone. This shows that Mother used drugs with the children present or allowed others to use drugs in the children's presence. As a result, we conclude that the trial court's Ground D finding, which can be supported by a single act or omission, was supported by clear and convincing evidence that Mother created conditions or surroundings that endangered Yasmin's and Nellie's physical well-being.

Next, "'[b]ecause it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may [also] support termination under' Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.) (quoting *Walker*, 312 S.W.3d at 617)). Mother's "failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under [Ground] (E) . . . ." *Id.* (quoting *In re J.A.W.*, No. 02-08-215-CV, 2009 WL 579287, at *4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.) (citing *Vasquez v. Tex. Dep't of Protective & Regul. Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied))).

Here, the evidence shows that Mother used drugs during the pendency of the case. Mother admitted to marihuana use and tested positive for cocaine up until the month before trial. Although Mother said she tested positive because she was around others that used cocaine, the trial court was free to disbelieve her. Moreover, the record shows that Mother failed to complete the outpatient drug treatment program recommended after her drug assessment, started dating a known drug dealer, and chose to stay in a home where domestic violence was common. Based on that evidence, the trial court could find, by clear and convincing evidence, that Mother engaged in a course of conduct that endangered Yasmin's and Nellie's physical and emotional well-being.

11

Because we find that legally and factually sufficient evidence supported the trial court's Ground D and E findings, we overrule Mother's first point of error.[4]

## IV. Sufficient Evidence Supported the Best-Interests Finding

In her last point of error, Mother argues that the trial court erred by finding that terminating her parental rights was in Yasmin's and Nellie's best interests. "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination '"can never be justified without the most solid and substantial reasons."'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (quoting *State v. Deaton*, 54 S.W. 901, 903 (Tex. 1900))).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'" *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

---

[4]Mother also complains that the evidence was insufficient to support the trial court's Ground P finding, but we need not review that Ground in light of our Ground D and E findings. *See In re N.G.*, 577 S.W.3d at 233.

In determining the best interests of a child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re N.L.D.*, 412 S.W.3d at 819 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). However, "the *Holley* factors are not a checklist." *In re C.C.*, 2025 WL 2147793, at *10. "Consequently, the fact-finder may choose to give greater weight to one factor over others." *Id.* (citing *In re C.H.*, 89 S.W.3d at 27). Further, in the best-interest analysis, we may consider evidence used to support the grounds for termination of parental rights. *In re C.H.*, 89 S.W.3d at 28. We review these factors using the legal and factual sufficiency standards of review above.

### III.    Analysis of the *Holley* Factors

The first *Holley* factor considers the desires of four-year-old Yasmin and three-year-old Nellie. The record shows that Mother had thirty visits with the children, but that those visits were later suspended. As a result, Yasmin and Nellie had not seen Mother in a year. The record does not contain the expressed wishes of the children, but it does show that the children were bonded to their placement, who wished to adopt them. From that evidence, the trial court was free to infer that the children preferred to live in a safe and stable environment. As a result, the record before us contains sufficient evidence as to the first *Holley* factor to support the trial

13

court's best-interest finding. *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied).

As for the next three factors, we consider "that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment." *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied). "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest." *Id.* While the emotional and physical needs of Yasmin and Nellie now and in the future were great given their young age, Mother used drugs during the pendency of the case and was in abusive relationships with Yasmin's Father and with a known drug dealer, Hall, who was the father of the child she was carrying at the time of trial. Mother admitted that having the children around Hall, who had shot a weapon in her home, was not safe. The evidence shows that Mother exercised poor judgment and lacked parenting skills when she placed the children in physical danger by allowing their exposure to oxycodone and cocaine, for which they tested positive. As a result, the evidence shows that Mother posed a danger to the children's emotional and physical needs, but that their placement was meeting those needs. Accordingly, the record before us contains sufficient evidence as to the second, third, and fourth *Holley* factors to support the trial court's best-interest finding.

As for the fifth factor, Mother completed parenting classes, and some counseling, but did not complete the outpatient drug treatment program recommended after her drug assessment or the substance abuse, domestic violence, and life skills classes required by her family service plan. Consequently, the record shows that Mother had not taken advantage of many of the

14

programs that were available to her. As a result, the record before us contains sufficient evidence as to the fifth *Holley* factor to support the trial court's best-interest finding.

The sixth and seventh factors consider the plans for the children and stability of the home. While Mother could not provide a safe and stable home free from domestic abuse and drugs, the children's placement did so. Mother's plan was for the children to be returned to her so they could live together in her newly acquired duplex. The Department's plan was to terminate Mother's parental rights so that Yasmin and Nellie could be adopted by their placement. Because there was no guarantee of Mother's success either with a drug treatment program or with being free from domestic violence, the record before us contains sufficient evidence as to the sixth and seventh *Holley* factors to support the trial court's best-interest finding.

As for the last two factors, Mother's drug use during the case and during her pregnancy with Hall's child, her continued exposure to domestic violence, her three missed visitations, and her failure to work a family plan of service showed that the existing parent-child relationship was not a proper one. Further, while Mother claimed she did not use cocaine, she had no excuse for continuing to expose herself to the drug in a manner that would ensure her positive drug tests, especially when knowing that they could result in termination of her parental rights. Accordingly, the record before us contains sufficient evidence as to the remaining *Holley* factors to support the trial court's best-interest finding.

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that it was sufficiently clear and convincing such that a reasonable fact-finder could

15

have formed a firm belief or conviction that termination of the parent-child relationship between Mother and her children was in the children's best interests. As a result, we overrule Mother's last point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     October 8, 2025
Date Decided:       October 10, 2025

16